Good morning, and if it may please the Court, I'm Steve Kaplan, and I represent the appellants in this matter. There's only one legal question at issue in this case, and that is whether the District Court had original federal question jurisdiction when it entered judgment. We contend that the Court did not, and that judgment should be reversed. The case should be remanded to the District Court with instructions that the entire action then, in turn, be remanded to the Los Angeles Superior Court. Is that noise disturbing you? I'll get used to it in a moment, Your Honor. I don't think they know that when they touch the microphone, we hear it amplified in this courtroom. Go ahead. I will be fine. I want to make sure that I'm heard over any other distracting noise. Your Honor, the California Warren Act provides fundamental individual rights to all California employees, union and nonunion. The food employers here argue that long after those rights have been violated, the employers and the unions together can enter into an agreement that retroactively eviscerates those rights. The question in this case is whether or not that later settlement agreement confers original federal question jurisdiction for the District Court. The United States Supreme Court in Caterpillar, and, Your Honor, you may hear Caterpillar more often than you would ever care to hear the word Caterpillar, but the United States Supreme Court in Caterpillar held that a defense under the complete preemption doctrine is not sufficient to confer original Federal jurisdiction. This really originates with the statute itself, Section 1331, which is the jurisdiction statute, which says that there is original jurisdiction over civil actions which arise under the laws of the United States. Caterpillar said arising under means that the Federal question, even in a complete preemption context, the Federal question has to be embedded in the complaint and not located externally, such as in a defense. So in that case, for example, there was an independent promise made by an employer to employees outside the collective bargaining agreement. Those employees later found themselves within the collective bargaining unit, and the employer argued that by virtue of their later finding themselves within the collective bargaining unit, the collective bargaining agreement must govern and its interpretation would be required to assess the integrity of their independent State law contract claims. And the Supreme Court said, no, that's not the case. The employer always has a right to assert a defense of a Federal contract if it wishes, but that defense is not part of the State law claim itself. Now, in this case, the State law claim is, in fact, even more independent and separate from any Federal question because we're not dealing with promises made by an employer. We're dealing with an independent State statute of general application to all employees. That statute does not in any way require a collective bargaining agreement to be interpreted. And in this case, there was no collective bargaining agreement, even in existence, at the time of the wrongdoing.   The district court erred in finding that it had jurisdiction to decide the case. Your Honor, I need to alert you that we've lost television coverage with Judge Gould. Yeah, I just now see you're from this. Hold on a second. Okay. Because if three judges are going to decide it, you want three judges to hear what you have to say. Okay. Something is wrong there, though, because the noise from there is not normally as distinct as it's been this morning, so something's wrong with the connection. I thought they were just brushing the mic, but there might be more. Over here, over there. Okay. Don't worry, we stopped the clock, so your time isn't running. Oh, I noticed. Thank you, Your Honor. Should we step outside now and take a recess? Hm? Should we recess now for a minute? Yes. All right. Court will be in recess until the problem is solved. Thank you. All right. This court is done in recess. Thank you. Thank you. Thank you. Thank you.  Do you know what happened to the connection? Do you know what happened to the connection? Okay. Scott, can you hear me? Yes, I can hear you. Okay. Am I back on? Yes, you are, Your Honor, but we've taken a quick recess. Hang on a second. Yeah, so did the court finish the argument on that case? No, no, we're taking a short recess. Like in the middle of the argument? Yes. Okay. Okay, well, I'm sitting here waiting then. Okay. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. All right. This Court resumes its session. Good morning again. Go ahead. Your Honors, I wanted to point out a couple of things that I think behoove the Court to consider. An employer may have a Federal defense, and I don't think there's any question but that the settlement agreement in this case operates as one of two things, both of which are defensive in nature, either a pure defense, an affirmative defense, or perhaps a defense of waiver. And both of those have been held by both the United States Supreme Court and the Ninth Circuit to be not sufficient or insufficient to confer original question jurisdiction. I'd like to, in particular, direct the Court's attention to the Balcorda case, which is a recent Ninth Circuit case, which stands for that proposition. In addition, Your Honor, there's a case which I think is found in footnote 5 of my reply brief called Smolarek. It's from the Seventh Circuit, I believe. And I may not have given it due consideration in my brief, and I want to just elaborate a moment. Here, in the Smolarek case, the employer clearly tendered a defense saying, I need to, in order to defend myself in this case, interpret the collective bargaining agreement. And the Smolarek case, I think, makes it about as clear as it has been in any case that that tendering of a defense requiring interpretation of a collective bargaining agreement is not sufficient to confer jurisdiction. Now, in our case, we believe the Court could base a decision on the absence of jurisdiction not only on the Caterpillar doctrine, but also on the fact that there is not even substantive or what we call ordinary preemption in this case. The Ninth Circuit's primary test for ordinary preemption is the Miller v. AT&T case, a case I think that came from Oregon. And in that case, the Ninth Circuit established a three-part test for determining whether ordinary preemption exists. Now, if ordinary preemption is not present, then there cannot logically be complete preemption. Under the Miller test, there can be ordinary preemption only if, number one, the collective bargaining agreement exists at the time of the wrongdoing, and, secondly, the settlement agreement does not confer any parallel rights, any coincidental rights on employees. So there's no way to say that there is a separate parallel right to the federal  right, which is one of the three requirements for there to be ordinary or substantive preemption. The ---- Counsel. Counsel, are you familiar with the Dedabali decision? Your Honor, I was going to bring that to your ---- It was rendered very recently. It's an opinion of Judge Smith. And I was on the panel. It struck me that it had some parallels to this case. Your Honor, before I was going to finish today, I was going to bring the Dedabali decision to the Court's attention. It came down. It was filed April 16th, just two days ago. It's Westlaw number 1112679. I am familiar with that case, and there are parallels to that case. What that case says is that the focus of the complete preemption analysis has to be on the allegations made by the plaintiff. Keep in mind that a party cannot file a lawsuit and base its jurisdictional claim on an anticipated defense. And so there really would have been no way in this case for the plaintiffs to have gone into court and said, and we've cited U.S. Supreme Court precedent on this point, we anticipate a Federal defense, and therefore we're going into Federal court in order to have the court adjudicate that Federal defense. And Caterpillar makes clear that there's no right to go into Federal court unless embedded in that original complaint there is an original basis for jurisdiction. And so while the district court below did ultimately enter judgment, its order is bereft of any explanation, unfortunately, and it has always plagued me to wonder, what was the Federal cause of action that we could have asserted that would have given the district court jurisdiction in order to then enter judgment against the plaintiffs? And I have no answer to that question because I can't find any such cause of action embedded in the complaint. Looking for that cause of action, if any of you raised children or grandchildren in the 1990s, you remember the book Where's Waldo? Looking for Waldo is like looking for the Federal cause of action here. It's very hard to find. In Waldo, in the Waldo books, he was there, and in this case, it isn't there. And for that reason, Your Honors, we don't believe that the district court had the jurisdiction to enter judgment against us in this case. Your Honor, I still have a considerable amount of time, but unless there are further questions, I'd like to save the remainder of my time for rebuttal. Thank you, counsel. Thank you. Good morning, and may it please the Court. I'm David Bacon. I'm here to argue on behalf of Ralph's Grocery Company. I'm going to argue for 15 minutes and 5 minutes. The remainder of the time will be argued by Mr. Gardner, who is counsel for Albertson's. I would like to start by talking about public policy. It's a very important issue here. As the Court is aware, Section 301 of the Labor Management Relations Act is extremely short. It's a bare-bones statute. And over the last 40 years, the Supreme Court and the circuit courts and the district courts have treated it as something of a blank slate, and they've filled in all the color, content, and meaning that we now have. For example, the statute does not even refer to preemption, yet the U.S. Supreme Court has found that the preemptive force of Section 301 is among the strongest of all the Federal statutes. In fact, it can trigger what's called complete preemption or super preemption. Back in 1987, when the U.S. Supreme Court was wrestling with the issue of the scope of arrest of preemption, it found that the statute had been modeled on Section 301. And so it found complete preemption, including removal jurisdiction under ERISA, again, based on Section 301. Our case here is very unique in terms of the Section 301 cases that have been removed and that come before the various courts. In most of the cases you see, and I think you see these on a daily basis, the type of claim is a California Fair Employment and Housing Act claim, where the State has all the interest and the Federal Government has none. It may be a wrongful termination claim, alleging the employee was fired for, example, filing a worker's compensation claim. It may be a claim, as the Ninth Circuit placed recently, involving Circus Circus, the Ward case, an assault and battery case. In each of those cases, the courts have explained that the Federal interest is essentially nil because, in part, there's no disputed provision of a collective bargaining agreement on which the case turns, and the area of the law, such as assault and battery, is one where even if the parties tried to address that in a collective bargaining agreement, they could not excuse an assault and battery as occurred in the Ward case. Our case is very, very different for at least two reasons. One involves a strike settlement agreement. The Supreme Court has found that strike settlement agreements are of special importance and that they should be removable and decided in Federal court to avoid what the Supreme Court called the problem of checkerboard jurisdiction. Some States not enforcing strike settlement agreements are not honoring their provisions or setting aside the provisions other States doing so. This is an area where Congress and the Supreme Court really want uniformity of the law. The other very important issue here involves arbitration. No one doubts that Ms. Dahl's claims and the other claims could have been to interpret the strike settlement agreement, and in particular whether paragraph 7, which has a settlement release of claims provision, applies to these individuals. They could have used the grievance arbitration machinery. The Supreme Court wants these cases removed in part because it's very concerned about lingering dislike on the part of the States for the arbitration procedure. Grievance arbitration procedures are a central mechanism of Federal labor law. It's very important they be honored. Contract disputes in the first instance should be decided under the grievance arbitration procedure with arbitrators and their knowledge of the contract and the industry to give meaning to the contract. Counsel, here are the questions I have. First, how do you address the principle that we should be looking at the complaints allegations, State court allegations, not at a defense in assessing removability? And second, if you're familiar with Dettabali, can you distinguish it, or how do you reconcile it with your position? Well, first of all, the common statement, for example, that the complaint is the touchstone for what's called the well-pleaded complaint rule. The artful pleading exception, which we're using here, is an exception to the well-pleaded complaint rule. Under the artful pleading exception, what the Court is required to do is to look through the art of the complaint to see whether the heart of the controversy may, for example, be entangled, may entangle the Court in interpreting a disputed provision of a collective bargaining agreement. I'm not aware of any Section 301 case where the case ultimately turned on construction of a disputed provision in a collective bargaining agreement where the Court found that remand was appropriate. The courts accept jurisdiction in those cases. In the Ninth Circuit, the lead decision, the panel, excuse me, the en banc decision, is Cramer. And there it said that where the employer can put forth a reasonable argument that the dispute ultimately turns on the interpretation and application of a disputed provision in a collective bargaining agreement, then you have complete preemption, and then you have removal jurisdiction. And that's exactly what we have here. The California, in the Warren Act, has expressly provided that the Act applies to what refers to as mass layoffs, and it defines mass layoffs very carefully to exclude a layoff in a labor dispute. It defines mass layoffs as ones occasioned by lack of work or lack of funds. We have neither of that here. In fact, the record shows the employers continue to operate during the strike. There is no lack of funds. There is no lack of work. The State of California has no interest in regulating this area. In fact, its statute has a hands-off provision versus, excuse me, vis-a-vis a, this was a defensive lockout in response to a whipsaw strike. California has no interest in regulating this. Even if California tried, we've argued, I think very correctly, that machinist preemption doctrine would come in and say, no, California can't require an employer to give 60 days advance notice or pay in lieu of notice in case of a lockout, any more than California law could require a union to give 60 days advance notice of a strike. It's a hands-off area under Federal law. It's exclusively a Federal preserve. All of the rights, obligations and duties of the parties here, we argue with great force, I think, are wrapped up and embodied in that strike settlement agreement. And a court at some juncture is going to have to interpret that strike settlement agreement to see whether there is a valid release of claims. Now, the plaintiffs here had a number of avenues of Federal redress in Federal court, but first to the grievance arbitration procedure to get a determination as to whether their so-called individual claims were effective vis-a-vis the strike settlement agreement. That's what the grievance arbitration procedure in paragraph 8 allowed them to do. Any dispute over the meaning or terms of the strike settlement agreement should immediately go to the grievance arbitration procedure under the new section 301, the grievance arbitration procedure. And the arbitrator ruled, yes, this strike settlement agreement doesn't cover your Warnock claims, then that's enough for 301 jurisdiction. They can proceed. By the same token, if the arbitration came down against them, they could have gone into Federal court under what's called a hybrid section 301 action, alleging that the union, in connection with the grievance and arbitration, did not fulfill its statutory duties, basically breach the duty of fair representation. And they could have sought to set aside the grievance arbitration result based on that. And they had a third avenue of redress, but the first two failed. They could have sued in Federal court under section 301, asserting that the union breached its duty of fair representation in negotiating a strike settlement agreement which covered the so-called Warnock claims. The union need not be a party in that type of a suit because no monetary redress is sought against the union. That type of suit is typically brought straight against the employer. Union employee versus employer. Hybrid section 301 action filed in Federal court. And the Federal court has the authority to come out and say, yes, we found that the union on the facts acted so unreasonably that we're going to set aside that provision. And, again, that's enough for section 301 jurisdiction. That's enough to allow the Federal court to proceed. As I understand Mr. Kaplan's argument, we look at the complaint and we decide where jurisdiction should be placed. And if we look at the complaint, we're looking at a State court action. And he says the only reason this becomes a Federal action is because the defense is going to involve Federal law. And your argument seems to substantiate his position. Are you asking me whether it's a defense? Yes. I think it's more than a defense. I think that all the rights, duties, and obligations are set forth in the strike settlement agreement, and including all the releases of claims, and the court has to make a decision whether it's a defense. But also, as I said earlier, Your Honor, I feel very strongly, and the case law bears this out, that when you're dealing with a complete preemption doctrine, the plaintiff is not the master of his or her complaint. Under the artful pleading exception, the court can go in and see whether the controversy really turns, for example, on an entanglement with disputed provisions of the collective bargaining agreement. When there's entanglement with the disputed provisions of the collective bargaining agreement, then you have Section 301 jurisdiction. Then you have complete preemption. The word entangle comes from your own decision, as I think you may recall, Eldridge v. Philco Services, 9252nd, 1434, a Ninth Circuit decision from 1990. The Ninth Circuit has used another very apt metaphor to describe this by saying that when the disputed provision in the collective bargaining agreement serves as the measuring rod for whether the suit may proceed, then you also have complete preemption, and then you also have Section 301 jurisdiction. So when you're under the complete ---- So if you had to state the narrow issue before us today, how would you state it? I didn't hear. My apologies. Sorry. Maybe. If you had to state the narrow issue that is before us for decision today, how would you state it? Well, I mean, well, the issue is whether the district court acted correctly in filing jurisdiction and dismissing the complaint. I understand. And that's the broad issue. But in order for us to answer that question, what do we have to decide? What does this Court have to decide? Yes. Yes. Basically, we've raised two issues on Federal removal jurisdiction. The first one I've talked about at some length, that's the Section 301 complete preemption removal jurisdiction, because the heart of the case turns on disputed collective bargaining agreement provisions, and this is a strike settlement agreement, and there's a grievance arbitration provision. All the significant Federal interests that gave rise to the wonderful complex body of Section 301 case law are at play here. All the reasons for Section 301 complete preemption apply here. The State has no interest at all. It's essentially disclaimed interest in even trying to regulate whether an employer give any advance notice of a defensive lockout in response to a whipsaw strike. By the same token, we have removal jurisdiction under the National Labor Relations Act because this complaint can properly be recharacterized as, in essence, a necessary assault on the authority and power of the union to negotiate a strike settlement agreement that settled, compromised, and released what the plaintiffs claim are their independent extraneous Warnock claims. It's very clear that courts have Federal jurisdiction when someone files suit to overturn provision of a collective bargaining agreement on the ground that the union lacked the authority to negotiate it. And that's also an issue that has to be resolved before this case is over. My bottom line is I think that the plaintiffs have a big fallacy here in terms of saying that the case turns on the distinction of whether the issue is characterized as an affirmative defense or characterized as an element that's expressed in a case in chief. The complete preemption doctrine through the well-pleaded complaint rule and, most importantly, through the artful pleading exception to the well-pleaded complaint rule does away with that dichotomy. It does away with that fallacy. Kennedy. I might as well let you stop, because you wanted to give five minutes, and we're already down from the five minutes. Yes. I think that was a good time to stop. Thank you. Thank you. Good morning, Your Honors. Lawrence Gartner for Appley and Defendant Albertson, Inc. The Denabali decision is distinguishable, Your Honors, because in Denabali, as the opinion indicates, there was no dispute over the meaning of the terms of the collective bargaining agreement and, therefore, no basis to determine that there had to be an interpretation of the collective bargaining agreement. In this case, clearly there is a dispute over the strike settlement agreement, what it means, its nature, how far it goes, what it settles, what it doesn't settle. So I think in that case it is distinguishable from Denabali. The issue before this Court, Your Honors, as I would frame it, would be if, in fact, you file a class action in State court which involves a strike settlement agreement after a labor dispute and involves the lockout during that strike settlement during that strike, does the Federal court have jurisdiction to, in fact, resolve the Rule 23 requirements for that class action in terms of that strike settlement agreement? This is an unusual case. This is not a particular case like Denabali where there's an individual suing. Here we have a class action. And that class action is, in fact, the collective bargaining unit covered not only by the strike but also by the strike settlement agreement. So, in fact, the Federal court not only has the right but also the obligation once this complaint is filed as a class action, which this complaint was, to determine does it meet the Rule 23 requirements. And, in fact, if it does, what is going to be tried as a class action? And in order to do that, it must look at the strike settlement agreement. There's no getting around it. It mustn't. That agreement must be interpreted. You know, we're assuming and certainly we argue that the strike settlement agreement resolved the claims of the collective bargaining unit with respect to the Warren Act. But it may not be. An arbitrator may rule differently. But those are issues that put this case, this unique case, into the realm of national labor policy, which the courts have said over and over again, back to Lincoln Mills, belong in the Federal courts. So looking at the complaint and looking at the allegations as the plaintiffs have framed them, the class action aspect of this case meets the requirements for removal and for preemption under Section 301. And the Federal judge below had every right to deny, an obligation to deny the motion to remand and, in fact, to rule on dismissal in terms of his interpretation of the Cal Warren Act, which was essentially an essential part of the case, irrespective of the class obligations. Thank you, Your Honor. Roberts. Your Honor, I'd like to address a few of the points that were raised by the employers. This is not a public policy case. Jurisdiction does not turn on a balancing test. If there's a particular Federal interest in labor disputes, which there is, that still begs the question of whether or not this particular complaint raises a Federal question. So the fact that there are, in other areas of Federal policy, an interest in labor disputes, that does not create jurisdiction. Your Honors, the ---- Kennedy. I can check it easily enough, but then this is a class action, and it does the limits of the class as the bargaining unit, is that correct? The class ---- it is a class action filed under the State class action statute. And it is applicable to the class is defined in the complaint as all of the employees of Rouse and Albertson's who were laid off without having been given the 60-days notice. Your Honor, the machinist preemption doctrine was raised here. That goes to the balancing question, which is not before this Court. Machinist preemption is a doctrine. It's a doctrine that we expect to have to contend with at some point in this case, but the machinist doctrine does not confer Federal question jurisdiction. There isn't a single case that so holds. It's purely a defensive assertion, and if you look at most machinist doctrine cases, I'm going to take a little bit of an intelligent or educated guess here. They all went up in the State court systems, maybe found their way to the United States Supreme Court after final decision by a State supreme court, unless perhaps there was diversity jurisdiction, but there's no independent jurisdiction based on a machinist defense. Counsel for Rouse directed your attention to the Kramer case. Counsel had it upside down. In the Kramer case, the Ninth Circuit found that there was no preemption. That there was no complete preemption, and that there was no ordinary substantive preemption, and did remand it back to the district court with instructions that it be sent back to the State court. What's most interesting about the Kramer case is the Kramer case said that the Kramer case, the employer said, well, we bargained away those rights, those State law statutory rights that the employees had, exactly like in this case. And the Ninth Circuit said that such a waiver, number one, would need to be clear and mistakable, but in any event, a waiver defense, quote, unquote, does not trigger Section 301 preemption. It's just a defense. And so Kramer is, in fact, a case I would urge the Court to take a second look at, but I think the Court will find that the Kramer case supports all of the positions or the contentions that we've been making in this case. Finally, there's this sort of vague argument, I hear, that somehow the settlement agreement occupied all of the space that involves this dispute. They are essentially saying the settlement agreement subsumes the original State statutory claim. Well, there's no logic to that argument, but even if there were logic to that argument, it's been rejected in the Caterpillar case, because that's exactly the argument that the employer made in the Caterpillar case. The employer said that the original independent State law cause of action was subsumed by the new collective bargaining agreement once those employees found themselves in that bargaining unit. And the Supreme Court said, no, there is no such thing as a subsumption doctrine. That's my word, not the Court's. And for that reason, this argument is a defensive argument which does not allow for original jurisdiction. Finally, Your Honor, Your Honors, I'm not sure I understood, but it perhaps is worth talking for a minute about the argument that the employers made that there is some independent Federal cause of action out there. The cause of action, of course, they envision as one just against the unions, not against themselves. And as we know from Caterpillar and its progeny, what we need is a parallel Federal cause of action that we could have asserted against the employers. It doesn't have to have allowed us to have the exact same remedies or anything like that, but it does require there be some cause of action for us to assert in Federal court. The hybrid analogy is completely wrong. Counsel talked about a hybrid action. A hybrid action is an action based on a collective bargaining agreement, where the employee says, my collective bargaining agreement was violated, but my union messed up by not taking it to arbitration. They breached their duty of fair representation to me. And so what a hybrid action is, the employee first has to show to the court that the union messed up and that it should have taken the case to arbitration, and then once it establishes that, it's basically broken down the door or the bar to the 301 action, and then it the employee gets to litigate the 301 contract action, breach of collective bargaining action in the Federal court. But here, there is no 301 cause of action we can bring. There is no hybrid action. If we broke down the door, if the union did something wrong, which we don't assert, if the union did something wrong, then we'd be breaking down the door to this lawsuit, not to a breach of a collective bargaining agreement, but to a breach of the California Warren Act. So the hybrid analogy is a false analogy in this case. And finally, Your Honors, I would just direct your attention to our reply brief, where we rather exhaustively discuss why there is no breach of the duty of fair representation in this case. I just want to focus on one of the things that we said in that brief, and that is, a union's duty of representation is limited to the authority it's given under Federal law to be the exclusive representative of employees under Section 9A of the National Labor Relations Act. The law doesn't tell unions that it's their job to go out and enforce independent individual state statutory rights. And that would be rather a frightening thing if suddenly unions were charged with the duty of making sure that employees who have other avenues of redress for their discrimination claims, for their wage and hour claims, for some of their safety claims, if we're now saying those all become duties of the unions to enforce under the exclusive duty of fair representation, and that would be talking about a hornet's nest. That would be a hornet's nest that the courts should avoid. And in fact, there's a footnote in my brief where we have some authority on that point. Kennedy. Counsel, just as a matter of my own personal, do you also represent the union? No, I do not. You don't ever? No. In fact, I just wondered, because you were sounding like you did. If you say you said you do not ever, 15 years ago, I did. Forget it. Okay. Thank you. I have nothing more. This is, you know, we talked yesterday, I guess it was, about perpetual. 15 years ago is a long time ago. Not perpetual, but a long time ago. We thank counsel for the argument. Case just argued is submitted.
judges: Farris, Gould, Cff, Duffy